IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| Thomas Barrow, individually and on behalf of all others similarly situated,<br><br>　　Plaintiff,<br><br>v.<br><br>Hooked Up Towing and Recovery, Inc.,<br><br>　　Defendant. | Civil Action No. 1:23-cv-00642<br><br>JURY TRIAL DEMANDED<br><br>COLLECTIVE ACTION |

## **PLAINTIFF'S ORIGINAL COLLECTIVE ACTION COMPLAINT**

Plaintiff, Thomas Barrow ("Barrow" or "Plaintiff"), files this Complaint against Hooked Up Towing and Recovery, Inc. ("HUT" or "Defendant"), showing in support as follows:

### I.     NATURE OF ACTION

1.     This is a civil action brought under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219, and the Portal-to-Portal Act, 29 U.S.C. §§ 251-262 (collectively, the "FLSA") seeking damages for Defendant's failure to pay Plaintiff time and one-half the regular rate of pay for all hours worked over 40 during each seven-day workweek while working for Defendant.

2.     Specifically, Plaintiff was misclassified as an independent contractor by Defendant. Plaintiff was paid a weekly rate and regularly worked in excess of 40 hours per workweek while performing his job duties for Defendant. However, he was never paid time and one-half his regular rate of pay by Defendant for any hours worked over 40 in a workweek during his work for Defendant. As a result of the independent contractor misclassification, Plaintiff did not enjoy and receive the benefits of employment, such as overtime wages.

3.     This civil action is also brought under the New Mexico Minimum Wage Act, N.M. Stat. Ann. §§ 50-4-20 – 50-4-30 ("NMMWA") for Defendant's failure to pay Plaintiff time and

one-half the regular rate of pay for all hours worked over 40 during each seven-day workweek while working for Defendant.

4. Plaintiff seeks all damages available under the FLSA and NMMWA, including back wages, liquidated damages, legal fees, costs, and pre- and post-judgment interest.

## II. THE PARTIES

**A.    Plaintiff Thomas Barrow**

5. Plaintiff is an individual residing in San Juan County, New Mexico. Plaintiff has standing to file this lawsuit.

6. Plaintiff began working for Defendant on or about June 11, 2021. Plaintiff is a current employee.

7. Plaintiff was paid a weekly rate of approximately $800 per week.

8. Plaintiff's written consent to participate in this lawsuit is filed along with this Original Complaint as Exhibit 1.

**B.    Collective Action Members**

10. The putative Collective Action Members are all current and/or former misclassified independent contractors similarly situated to Plaintiff who: (a) work/worked for Defendant in connection with its vehicle towing business, but are/were issued IRS Tax Form 1099s; (b) are/were paid on a flat weekly basis; (c) had/have job duties/titles of a tow-truck driver; (d) work/worked more than 40 hours in any workweek; and (e) are/were not paid time and one-half their regular rate of pay for all hours worked over 40 in each such workweek by Defendant.

11. Plaintiff and the putative Collective Action Members are all similarly situated within the meaning of Section 216(b) of the FLSA.

12. The relevant time period for the claims of the putative Collective Action Members

is three years preceding the date this lawsuit was filed and forward.

C.     **Defendant Hooked Up Towing and Recovery, Inc.**

9.     Defendant is a corporation organized under the laws of the State of New Mexico.

10.    During all times relevant to this lawsuit, Defendant has done business in the State of New Mexico.

11.    Defendant's principal place of business, as listed with the New Mexico Secretary of State is 41 Road 3500, Flora Vista, New Mexico 87415.

12.    At all times relevant to this lawsuit, Defendant is and has been an "enterprise engaged in commerce" as defined by the FLSA.

13.    At all times relevant to this lawsuit, Defendant employed and continues to employ two or more employees.

14.    At all times relevant to this lawsuit, Defendant employed two or more employees who engaged in commerce and/or who handled, sold or otherwise worked on goods or materials that have been moved in or produced for commerce by any person.

15.    Defendant employed two or more employees who regularly engaged in commerce in their daily work.

16.    Furthermore, Defendant employed two or more employees who regularly handled, sold or otherwise worked on goods and/or materials in their daily work that were moved in and/or produced for commerce.

17.    On information and belief, at all times relevant to this lawsuit, Defendant has had annual gross sales or business volume in excess of $500,000.

18.    Defendant may be served with summons through its registered agent Melani Rainwater at 41 Road 3500, Flora Vista, New Mexico 87415.

### III.  JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction over this case based on federal question jurisdiction pursuant to 28 U.S.C. § 1331, because Plaintiff's claims are based on federal law, namely the FLSA. *See* 29 U.S.C. § 216(b).

20. This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative fact.

21. The United States District Court of New Mexico has personal jurisdiction over Defendant because Defendant does business in New Mexico and in this District, and because many of the acts complained of and giving rise to the claims alleged occurred in New Mexico and in this District.

22. Venue is proper in this District and/or Division pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to all claims occurred in this District.

### IV.  FACTUAL BACKGROUND

23. Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

24. Plaintiff is employed by Defendant as a tow-truck driver in connection with its disabled car rescue and vehicle repossession business operations. Plaintiff and similarly situated workers' primary job duties involve hauling cars from a location to an impound lot.

25. While employed by Defendant, Plaintiff was at all times issued an IRS Tax Form 1099 for his work, and Defendant failed to pay Plaintiff overtime premium pay when he worked more than forty (40) hours in a workweek, which was common. At material times, Defendant paid

Plaintiff and similarly situated workers only their respective weekly rates of pay irrespective of whether they had already worked forty (40) hours in a workweek.

26. During the time period relevant to Plaintiff's collective action claims, Defendant employed many other tow-truck drivers who were paid on a 1099 basis without receiving any overtime premium pay for hours worked over forty (40) in a workweek.

27. Plaintiff and the putative collective action members frequently worked over forty (40) hours in a seven-day workweek. Defendant did not pay Plaintiff time and one-half the regular rate of pay for all hours worked over forty (40) during each and every workweek. Plaintiff's weekly work schedule typically encompassed 84 hours of work for Defendant.

28. Defendant classified Plaintiff and the putative collective action members as independent contractors. However, the economic reality under the FLSA is that they were Defendant's employees at all material times. Defendant set the weekly work schedule for Plaintiff and the putative collective action members, and they were expected and required to work for Defendant full-time, which entailed regular workweeks that significantly exceeded 40 hours of work.

29. Plaintiff and the putative collective action members were supervised by a managerial employee of Defendant at all relevant times. They were instructed in the manner in which to do their job by that managerial employee. Plaintiff and the putative collective action members were not permitted to and did not hire their own employees to assist in the performance of their job duties.

30. Plaintiff and the putative collective action members did not exercise sufficient, if any, control over a meaningful part of the business so as to respectively be separate economic

entities from Defendant. They were simply a part of Defendant's workforce performing job duties and work that was an integral part of Defendant's business operations.

31. At all times relevant, Plaintiff and the putative collective action members were economically dependent on Defendant. For example, Defendant required/permitted them to perform work which resulted in cash payments or payment through a Venmo account. The work demand from Defendant prevented Plaintiff and the putative collective action members from a meaningful opportunity for earned income from a source other than working for Defendant.

32. Plaintiff and the putative collective action members were paid a weekly rate by Defendant for the work they performed for Defendant. The more weeks they worked, the more money they made. Plaintiff and the putative collective action members had no opportunity for loss. Instead, there was only opportunity for earned income based upon weeks worked for Defendant that were paid by Defendant.

33. All major components open to initiative, such as advertising, pricing, and business decision making, were controlled by Defendant, not Plaintiff and/or the putative collective action members.

34. In addition to not being paid overtime premium compensation for overtime hours worked, Plaintiff and the putative collective action members were not paid/provided benefits enjoyed by workers classified as employees by Texas SWD. Such benefits include health benefits and retirement benefits.

## V. CONTROLLING LEGAL RULES

35. "Employ" includes to suffer or permit work. 29 U.S.C. § 203(g).

36. The FLSA generally requires that an employer employing an employee for a workweek exceeding 40 hours must compensate the employee for hours worked over 40 "at a rate not less than one and one-half times the regular rate of pay." 29 U.S.C. § 207(a)(1).

37. Failing to pay the required overtime premium for hours worked over 40 in a workweek is a violation of the FLSA. 29 U.S.C. § 216.

38. Whether an individual is an employee, who is covered by the FLSA's provisions, as opposed to an independent contractor, who is not covered by the FLSA, is determined by the economic realities test. *See Merrill v. Harris*, No. 21-1295, 2022 WL 3696669, at *2 (10th Cir. Aug. 26, 2022). The purpose of the economic realities test is to determine whether "the worker is economically dependent on the business to which he renders service … or is, as a matter of economic fact, in business for himself." *Id.* (*citing Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998).

39. District Courts within the Fifth Circuit consider the following five factors in assessing the economic reality of the working relationship: (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship. *Id.* at *5 (*citing Baker*, 137 F.3d at 1440). The Tenth Circuit further noted that: "no factor 'in isolation is dispositive; rather the test is based upon a totality of the circumstances.'" *Id.* (quoting *Dole v. Snell*, 875 F.2d 802, 805 (10th Cir. 1989).

40. "[I]t is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough.

Management has the power to enforce the rule and must make every effort to do so." 29 C.F.R. § 785.13.

41. Federal law requires employers to make and keep accurate and detailed payroll data for non-exempt employees. 29 U.S.C. § 211(c); 29 C.F.R. § 516.2. Amongst other things, the regulations require employers to make and keep payroll records showing data such as the employee's name, social security number, occupation, time of day and day of week which the workweek begins, regular hourly rate of pay for any week in which overtime pay is due, hours worked each workday and total hours worked each workweek, total daily or weekly straight time earnings, total premium pay for overtime hours, total wages paid each pay period and date of payment and pay period covered by the payment, and records of remedial payments. 29 C.F.R. § 516.2(a)&(b). Employers are required to maintain the foregoing data for a minimum of three years. 29 C.F.R. § 516.5.

## VI.     FLSA CLAIMS FOR OVERTIME PAY

42. Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

43. At all relevant times, Defendant is/was an eligible and covered employer under the FLSA. *See* 29 U.S.C. § 203(d).

44. At all times relevant to this lawsuit, Defendant has been an enterprise engaged in commerce under the FLSA. *See* 29 U.S.C. § 203(s)(1)(A).

45. Plaintiff is an employee of Defendant pursuant to the FLSA. 29 U.S.C. § 203(e).

46. Plaintiff was not exempt from overtime under the FLSA.

47. Plaintiff was paid on a weekly basis by Defendant.

48. At times relevant to this lawsuit, Plaintiff worked in excess of 40 hours per seven-day workweek as an employee of Defendant.

49. Defendant was required to pay Plaintiff time and one-half his regular rate of pay for all hours worked over 40 in each relevant seven-day workweek. 29 U.S.C. § 207(a)(1).

50. Defendant failed to pay Plaintiff and putative Collective Action Members one and one-half times their respective regular rates of pay for all hours worked over 40 in each and every seven-day workweek during the time period relevant to this lawsuit in violation of the FLSA.

51. 29 U.S.C. § 211(c) provides in relevant part:

> Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports there from to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder.

52. 29 C.F.R. § 516.2 further requires that every employer shall maintain and preserve payroll or other records containing, without limitation, the total hours worked by each employee each workday and the total hours worked by each employee during the workweek.

53. To the extent that Defendant failed to maintain all records required by the aforementioned statute and regulations and failed to furnish to Plaintiff and the putative Collective Action Members comprehensive statements showing the hours they worked during the relevant time period, Defendant also violated the law in that regard.

54. When an employer fails to keep accurate records of hours worked by its employees, the rule in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 is controlling. That rule states:

> [W]here the employer's records are inaccurate or inadequate . . . an employee has carried out his burden if he proves that he has in fact performed work for which he

was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence. If the employer failed to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

55. The U.S. Supreme Court set forth the above standard to avoid allowing the employer to benefit by failing to maintain proper records. Where damages are awarded pursuant to the standard in *Mt. Clemens*, "[t]he employer cannot be heard to complaint that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with . . . the Act." *Id.*

56. Defendant's violation of the FLSA, as described above, is/was willful within the meaning of 29 U.S.C. § 255(a). At all material times, Defendant was aware that Plaintiff was not paid overtime premium pay at the rate of time and one-half his regular rate of pay for all hours worked over forty in a seven-day workweek.

57. Plaintiff specifically pleads recovery for the time period of three years preceding the date this lawsuit was filed and forward for their FLSA claim as the result of Defendant's willful conduct. *See* 29 U.S.C. § 255(a).

58. Plaintiff seeks all damages available for Defendant's failure to timely pay all overtime wages owed, including back wages, liquidated damages, reasonable attorneys' fees and costs, and post-judgment interest.

## VII.   **COLLECTIVE ACTION CLAIMS (FLSA)**

59. Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

60. Plaintiff seeks to bring claims under the FLSA, pursuant to 29 U.S.C. § 216(b),

individually and on behalf of a collective preliminarily defined as:

> **all current and/or former misclassified independent contractors who: (a) work/worked for Defendant in connection with its vehicle towing operations, but are/were issued IRS Tax Form 1099s; (b) are/were paid on a flat weekly basis; (c) had/have job duties/titles of a tow-truck driver; (d) work/worked more than 40 hours in any workweek; and (e) are/were not paid time and one-half their regular rate of pay for all hours worked over 40 in each such workweek by Defendant.**

61. Plaintiff has personal knowledge that other putative Collective Action Members were paid pursuant to the same policy, namely, paid a day rate and/or hourly rate for all hours of work without receiving overtime premium pay for all hours worked over forty in each seven-day workweek.

62. The putative Collective Action Members are similarly situated to Plaintiff and to one another, within the meaning of Section 216(b) of the FLSA.

63. The putative Collective Action Members are not exempt from receiving overtime premium pay under the FLSA. Defendant's failure to pay overtime wages results from generally applicable policies or practices, and does not depend on the personal circumstances of the putative Collective Action Members.

64. The specific job titles or precise job responsibilities of each putative collective action member do not prevent collective treatment.

65. Although the exact amount of damages may vary among the putative Collective Action Members, their respective damages are easily calculable using a simple formula uniformly applicable to all of them.

66. Plaintiff reserves the right to establish sub-classes and/or modify class notice language as appropriate in any motion to certify a collective action or other proceeding.

67. Plaintiff further reserves the right to amend the definition of the putative class, or subclasses therein, if discovery and further investigation reveal that the putative class should be expanded or otherwise modified.

## VIII. NMMWA CLAIMS FOR OVERTIME PAY

68. Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

69. At all times relevant to this lawsuit, Defendant has been an employer within the meaning of N.M. Stat. Ann. § 50-4-21(B).

70. At all times relevant to this lawsuit, Plaintiff was an employee of Defendant within the meaning of N.M. Stat. Ann. § 50-4-21(C).

71. The NMMWA requires payment of one and one-half times the employee's regular rate of pay for each hour worked over forty (40) hours per workweek (*see* N.M. Stat. Ann. § 50-4-22(D)).

72. As the result of the foregoing conduct, as alleged, Defendants failed to pay all wages due under the NMMWA by failing to pay all due and owing overtime wages to Plaintiff. This conduct violated the NMMWA.

73. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered from a loss of income and other damages.

74. Pursuant to N.M. Stat. Ann. § 50-4-32, Plaintiff is entitled to recover for all violations that occurred as part of Defendant's continued course of conduct regardless of the date on which they occurred.

## IX. JURY DEMAND

75. Plaintiff demands a jury trial.

## X.  DAMAGES AND PRAYER

76.  Plaintiff asks that the Court issue summons for Defendant to appear and answer, and that Plaintiff be awarded a judgment against Defendant for the following or order(s) from the Court for the following:

a.  All damages allowed by the FLSA and NMMWA, including back wages;

b.  Liquidated damages in an amount equal to FLSA-mandated back wages and/or NMMWA-mandated back wages;

c.  Legal fees, costs and expenses, as permitted under the FLSA and/or NMMWA;

d.  Pre- and Post-judgment interest, as permitted under the FLSA and/or NMMWA;

e.  All other relief to which Plaintiff may be justly entitled.

Dated: August 1, 2023

Respectfully submitted,

By:   s/Melinda Arbuckle
Melinda Arbuckle
marbuckle@wageandhourfirm.com
Ricardo J. Prieto
rprieto@wageandhourfirm.com
5050 Quorum Drive, Suite 700
Dallas, Texas 75254
(214) 489-7653 – Telephone
(469) 319-0317 – Facsimile

COUNSEL FOR PLAINTIFF AND PUTATIVE COLLECTIVE ACTION MEMBERS